UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(In Chambers):** PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (filed in the United States District Court for the Southern District of New York on 3/19/08)

**(In Chambers):** PLAINTIFF'S MOTION SEEKING AN ORDER DISQUALIFYING LOEB & LOEB, LLP AS COUNSEL FOR NOMINAL DEFENDANT BROADCASTER, INC. (filed 6/27/08)

**(In Chambers):** PLAINTIFF'S MOTION SEEKING AN ORDER APPOINTING A RECEIVER (filed 07/14/08)

**(In Chambers):** DEFENDANTS' MOTION FOR RELIEF FROM CLERK'S ENTRY OF DEFAULT AGAINST ALCHEMY F/X, INC. AND TO STRIKE BAYTREE'S REQUEST FOR DEFAULT AGAINST DEFENDANTS (filed 07/14/08)

## I.     INTRODUCTION

On February 15, 2008, Baytree Capital Associates, LLC ("Baytree"), derivatively on behalf of Broadcaster, Inc. ("Broadcaster"), commenced the instant action in the United States District Court for the Southern District of New York against defendants Nolan Quan ("Quan"); Martin R. Wade III ("Wade"); Blair Mills ("Mills"); Richard Berman ("Berman"); Andrew Garroni ("Garroni"); Jason Brazell ("Brazell"); Robert Gould ("Gould"); Sanger Robinson ("Robinson"); Alchemy Communications, Inc. ("Alchemy Communications"); Frostham Marketing, Inc. ("Frostham"); Pacificon International, Inc. ("Pacificon"); Longview Media, Inc. ("Longview"); AccessMedia Networks, Inc. ("AccessMedia"); Alchemy F/X, Inc. ("Alchemy F/X"); Innovative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|----------|----------------------|------|-----------------|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

Networks, Inc. ("Innovative Networks"); Binary Source, Inc. ("Binary"); Broadcaster, LLC; Transglobal Media, LLC ("Transglobal"); Software People, LLC ("Software People"); and Access Media Technologies, LLC ("AMT"). Baytree alleges that defendants -- which include officers and directors of Broadcaster as well as related companies and individuals -- engaged in improper and undisclosed related party transactions, thereby obtaining and misappropriating millions of dollars of Broadcaster's funds as part of a scheme involving the false promotion of a social networking website called broadcaster.com.

Baytree alleges the following claims against all defendants: (1) violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; (2) breach of fiduciary duty; (3) waste of corporate assets; (4) unjust enrichment; (5) conversion of corporate assets and self-dealing; and (6) violations of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962 (a), (c), and (d); and § 1964(c). Additionally, Baytree alleges a separate claim against Quan for violation of § 1962(b) and § 1964(c). Baytree seeks damages and injunctive relief, including the appointment of a receiver to oversee Broadcaster's operations.

On or about March 19, 2008, Baytree filed an application for a temporary restraining order and preliminary injunction. On March 20, 2008, the district court, the Hon. Louis L. Stanton, presiding, entered an order to show cause why an order should not issue, pursuant to Federal Rules of Civil Procedure 64 and 65, enjoining defendants from spending or conveying the assets and shares of Broadcaster or, in the alternative, directing the appointment of a receiver to review and control Broadcaster's assets and shares. On March 28, 2008, Judge Stanton issued a temporary restraining order, restraining Broadcaster "from spending, transferring, selling, encumbering, pledging, or conveying in any manner the funds, assets, and/or treasury stock of Broadcaster, Inc. except in the ordinary course of Broadcaster's business, and that all such ordinary course payments in excess of $1000 shall be reviewed by outside counsel to Broadcaster."

On April 30, 2008, Judge Stanton ordered that this action and a related action, Goodman v. Broadcaster, Inc., CV-08-2848 CAS (AJWx) ("the Goodman action"), be transferred to this Court. The Goodman action was commenced on March 4, 2008, by a director of Broadcaster, Paul Goodman ("Goodman"), against Broadcaster, Wade, Mills, and Quan. Goodman alleges that the defendants engaged in corporate waste, breached

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|----------|------------------------|------|------------------|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

their fiduciary duties, and improperly issued shares of Broadcaster.

On June 25, 2008, Baytree filed a request for the Clerk of the Court to enter a default against defendants Berman; Alchemy Communications; Alchemy F/X; AccessMedia; AMT; Broadcaster, LLC; Transglobal; Software People (collectively, "the Berman defendants"); and Broadcaster. On July 7, 2008, the Court issued a notice of deficiency in regard to this request, and it directed Baytree to file a new request correcting the deficiencies in order to have the default reconsidered. On the same day, the Clerk of the Court entered a default as to Alchemy F/X. Baytree did not refile its request for an entry of default against the Berman defendants.

On July 14, 2008, the Berman defendants filed a motion for relief from the Court Clerk's entry of default against Alchemy F/X and to strike Baytree's request for default. Baytree filed an opposition thereto on July 21, 2008. The Berman defendants filed a reply on July 28, 2008.

Nominal defendant Broadcaster and AccessMedia (collectively, "the Broadcaster defendants") are represented in this action by Michael L. Mallow ("Mallow"), Michael Philip Zweig ("Zweig"), and Walter Allan Edmiston of the law firm of Loeb & Loeb LLP ("Loeb & Loeb"). On June 27, 2008, Baytree filed a motion to disqualify Loeb & Loeb as counsel for Broadcaster. The Broadcaster defendants filed an opposition thereto on July 21, 2008. Baytree filed a reply on July 29, 2008.

On July 14, 2008, Baytree filed a motion to appoint a receiver for Broadcaster. The Broadcaster defendants filed an opposition thereto on July 21, 2008. Baytree filed a reply on August 1, 2008.

On July 21, 2008, the Broadcaster defendants filed an opposition to Baytree's application for a preliminary injunction. Baytree filed a reply on August 1, 2008.

On July 22, 2008, the Berman defendants, along with Quan, Wade, and Mills, joined in the Broadcaster defendants' oppositions to Baytree's motions to appoint a receiver and for a preliminary injunction.

Hearings were held on August 8, 14, and 15, 2008. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

## II.    FACTUAL BACKGROUND

### A.    The Parties

Broadcaster, the nominal defendant in this derivative action, is a Delaware corporation that came into being on or about June 2, 2006, following the merger of International Microcomputer Software ("IMSI") and AccessMedia, a company controlled by Baytree and several companies controlled by Quan.  Compl. ¶¶ 25, 34; Declaration of Martin R. Wade III ("Wade Decl.") ¶ 4.  Following this transaction, IMSI changed its name to Broadcaster.  Id. ¶ 8.  Broadcaster's securities are publicly traded on the Over the Counter Bulletin Board under the symbol "BCAS."  Compl. ¶ 25.  Broadcaster hosts a social video networking website called broadcaster.com, which allows users to communicate over the Internet through the use of webcams and videos.  Id.

Broadcaster's Board of Directors ("the Board") initially consisted of five members: Goodman; Dr. Vincent F. Orza, Jr. ("Orza"); and defendants Wade, Miller, and Berman. Id. ¶ 62.  Baytree alleges that, shortly before the filing of this action, the Board voted to remove Goodman and Orza from the Board and to install Arthur G. Camiolo ("Camiolo") and Lawrence Johnson ("Johnson") in their places.  Id.  Baytree alleges that Camiolo and Johnson were sponsored entirely by Quan and Wade.  Id.  In a letter to Wade dated February 18, 2008, Orza resigned from the Board.  Wade Decl. ¶ 73; Broadcaster Def.'s Compendium of Exhibits ("Compendium"), Ex. 20.  In the Goodman action, on March 4, 2008, the Supreme Court for the State of New York entered a temporary restraining order, preventing Broadcaster, Wade, Quan, and Mills from taking any action to remove Goodman from the Board.

At all relevant times, plaintiff Baytree has been a shareholder of Broadcaster.  Id. ¶¶ 3-4.  Baytree provided financial consulting services in connection with the merger of IMSI and AccessMedia.  Wade Decl. ¶ 8; Reply in Support of Mot. for Prelim. Inj. 5. Michael Gardner ("Gardner") -- not a party to this action -- is the managing member of Baytree.  Id.  Gardner owns a significant number of Broadcaster's shares.  Id.

For much of the relevant time period, Quan was the President and Chief Operating Officer of Broadcaster.  Compl. ¶ 5.  According to Baytree, Quan has been, at all relevant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

times, the largest shareholder of Broadcaster. Compl. ¶ 5. Baytree alleges that Quan controls Broadcaster, LLC; Transglobal; and Software People and that these three companies respectively possess 18.8%, 10%, and 10% ownership interests in Broadcaster. Id. ¶¶ 21-23. Baytree also alleges that Quan controls AMT, which possesses a "substantial ownership interest" in Broadcaster. Id. ¶ 24. According to Baytree, Quan effectively controls Broadcaster. Id. ¶ 45.

Wade, at all relevant times, has been Chief Executive Officer of Broadcaster and Chairman of the Board. Id. ¶ 6. Wade was formerly the Chief Executive Officer of IMSI. Wade Decl. ¶ 1.

Mills, at all relevant times, has been the Chief Financial Officer of Broadcaster and a member of the Board. Compl. ¶ 7. Berman, at all relevant times, has been a member of the Board and the Chairman of the Board's Audit Committee. Id. ¶ 8.

Garroni, at all relevant times, has served as Broadcaster's shareholder representative. Id. ¶ 9. He has also served as President of Pacificon and Binary and the Chief Executive Officer of Longview. Id. Additionally, Baytree alleges that Garroni has a "significant interest" in Frostham. Id.

According to Baytree, Frostham is a Florida corporation that transacts business at the corporate address of Broadcaster and which, at one time, registered with the California Secretary of State using Garroni's home address. Id. ¶ 14; Declaration of Brian Gardner ("Brian Gardner Decl.") ¶ 2, Ex. W. Baytree further alleges that Frostham has used a postal box that is also used by Pacificon. Id.

Baytree alleges that Brazell was previously an employee of Broadcaster and is presently the Chief Executive Officer of Frostham. Id. ¶ 10. Baytree alleges that Gould is an employee of Broadcaster and the Vice President of Broadcaster Interactive Group, Inc. ("BIG"), which is a wholly owned subsidiary of Broadcaster. Id. ¶ 11; Wade Decl. ¶ 26. Additionally, Baytree alleges that Robinson is an employee of Broadcaster and President of BIG. Compl. ¶ 12.

**B.     The Federal Trade Commission Action**

On August 8, 2006, the Federal Trade Commission ("FTC") filed a complaint in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

this Court against numerous defendants.  <u>FTC v. Digital Enters., Inc.</u>, CV-06-4923 CAS (AJWx) ("the FTC action").  Among these defendants were AccessMedia; Pacificon; Alchemy Communications, Inc.; Innovative Networks; Binary; and Garroni.  On September 5, 2007, the FTC filed a first amended complaint, adding Frostham and Longview as parties defendant.  Mallow of Loeb & Loeb represented Garroni, Pacificon, Innovative Networks, Binary, Longview, and Frostham ("the FTC defendants") in the FTC action.

The FTC alleged that the defendants engaged in an unfair and deceptive computer scheme to coerce payments from consumers.  According to the FTC, the defendants -- using the websites movieland.com, moviepass.tv, and popcorn.net -- offered to consumers an Internet service that provided access to media content, such as news, sports, games, and adult entertainment.  The FTC alleged that the defendants required unwitting consumers to download software that the defendants represented was necessary to access the media content.  In reality, the FTC alleged, the defendants' software caused "pop-up" windows to appear on consumers' computer screens.  The FTC alleged that these windows, which demanded that consumers make payments to the defendants, appeared on consumers' computer screens with ever-increasing frequency, thereby disabling their computers.  The FTC further alleged that consumers either paid the defendants a fee to stop the pop-up windows or were compelled to undertake onerous efforts to uninstall the defendants' software.

On September 5, 2007, the FTC and the defendants in the FTC action entered into a settlement pursuant to which the defendants agreed to pay the FTC more than $500,000 and stipulated to permanent injunctive relief that restricted their business practices and required them to conduct certain remedial measures.  Baytree alleges that although Broadcaster was not a named defendant in the FTC action, it paid the monetary settlement amount on behalf of the defendants, in addition to their legal fees and expenses.  Compl. ¶ 37.  Additionally, Baytree alleges that Brazell signed the settlement agreement on behalf of Frostham -- as its "CEO/President" -- while he was an employee of Broadcaster.  <u>Id.</u> ¶ 47.

C.    **Baytree's Allegations**

According to Baytree, while the FTC action was pending, Broadcaster promoted its social video networking website, broadcaster.com, which it claimed would generate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

revenue by displaying advertisements.  Id. ¶ 38.  Baytree alleges that Broadcaster reported in public filings with the Securities and Exchange Commission ("SEC") that during the fiscal year ended June 30, 2007, it had spent approximately $6,288,000 on Internet advertising to encourage consumers to visit broadcaster.com.  Id.  Baytree alleges that Broadcaster claimed to have paid an additional $9 million to Frostham and Longview so that they would steer Internet "traffic" to broadcaster.com.  Id. ¶¶ 38, 40.

Baytree alleges that in reality, these payments were not used to promote broadcaster.com, but instead were disguised payments to defendants made as part of a scheme -- orchestrated by Quan and directors Wade, Mills, and Berman -- to loot Broadcaster's assets.  Id. ¶¶ 39-40.  Baytree alleges that Frostham and Longview were complicit in the scheme to drain Broadcaster's assets, and notwithstanding Broadcaster's payment of millions of dollars to these companies, they performed no valuable services for Broadcaster.  Id. ¶¶ 40, 46-52.  Baytree alleges that Frostham and Longview are closely tied to Broadcaster and to Quan.  Id. ¶¶ 46-47, 49-52.

Baytree further alleges that Alchemy Communications, which is controlled by Quan, with the assistance of and at the direction of other defendants, used malicious software to infiltrate and alter users' computers, thereby causing these computers to visit automatically broadcaster.com.  Id. ¶ 40; Brian Gardner Decl. ¶ 2, Ex. N [Broadcaster's Form 10-Q for the period ending March 31, 2008] at 18, 19.  Baytree alleges that Broadcaster registered each of these involuntary visits as a "hit" or a "unique visitor" to broadcaster.com in order to create the false impression that a consumer had intentionally visited the website.  Id.  According to Baytree, Broadcaster issued press releases in which it falsely claimed, on the basis of these "hits" or "unique visitors," that broadcaster.com had become a popular website.  Id. ¶ 42.

Baytree also alleges that Quan's compensation was linked to this scheme to fraudulently promote broadcaster.com.  Baytree alleges that Quan's compensation agreement with Broadcaster provided that he would earn millions of additional shares of Broadcaster's common stock ("earn out shares") if the company met certain revenue and earnings targets.  Id. ¶ 43.  On January 4, 2007, Baytree alleges, Wade, Mills, and Berman -- at Quan's behest -- altered the manner in which Quan's compensation is calculated by equating each "unique visitor" with one dollar of earnings.  Id.  Thus, Baytree alleges, as a consequence of the scheme to create false "hits" with respect to broadcaster.com, Quan was able to realize his earn out shares, which enabled him to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

increase his control of Broadcaster.  Id. ¶¶ 43, 45.

Baytree alleges that other companies were involved in the alleged scheme to deplete Broadcaster's assets.  According to Baytree, during fiscal year 2007,  Broadcaster fraudulently paid $1,837,000 to Pacificon, as well as large sums of money to Binary, for fake credit card processing fees.  Id. ¶¶ 53-54.  Baytree alleges that these companies are linked to Broadcaster through Garroni, who was the shareholder representative and employee of Broadcaster at the same time that he an officer of Binary and Pacificon.  Id. ¶¶ 53-54.  Baytree further alleges that Broadcaster never disclosed to the public or to its auditors its related party transactions with Frostham, Longview, Pacificon, or Binary.  Id. ¶ 55.

Baytree also alleges that Broadcaster made fraudulent payments in the amount of almost $ 2 million to Alchemy Communications, as well as other fraudulent payments to Alchemy F/X and Broadcaster, LLC, companies that are, according to Baytree, at least partly controlled by Quan.  Id. ¶¶ 56.  Broadcaster allegedly made further fraudulent payments to Quan, Robinson, and Gould.  Id.

**D.    The Gardner Action**

In response to Orza's February 18, 2008 letter stating his resignation from the Board, see Compendium, Ex. 20, Wade wrote a letter to Orza dated February 22, 2008. Compendium, Ex. 21.  This letter was attached to the Form 8K that Broadcaster filed with the SEC on February 22, 2008.  Wade Decl. ¶ 73.

On March 3, 2008, Gardner filed a civil action against Wade in the Supreme Court of the State of New York.  Gardner alleged that Wade's February 22, 2008 letter to Orza contained false and defamatory statements concerning Gardner, including that Orza had ties to Gardner, that it was Gardner's plan for Broadcaster to shift its business model toward the development of a social networking website, and that Gardner had urged the Board to adopt the operating budget that Orza had described as irresponsible and wasteful.  Wade removed the action to the United States District Court for the Southern District of New York on March 19, 2008.  Gardner v. Wade, CV-08-2850 LLS ("the Gardner action").  On June 27, 2008, the court, the Hon. Louis L. Stanton, presiding, ordered that the action be dismissed for lack of personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

In the Gardner action, Wade was initially represented by Eugene R. Licker ("Licker") and Zweig of Loeb & Loeb.  Later, Wade was represented by Michael F. Armstrong ("Armstrong") of the law firm of Howrey LLP, although Licker and Zweig did not formally withdraw as counsel.

### E.    The Goodman Defamation Action

On or about January 15, 2008, Goodman filed a lawsuit against Wade, Quan, Mills, Broadcaster, Garroni, and several other individuals and corporations in the Supreme Court of the State of New York.  Goodman v. Wade, CV-08-2851 JWJ ("the Goodman defamation action").  Goodman sought an injunction to prevent the defendants from disseminating false statements about him in public filings with the SEC.
On March 18, 2008, Broadcaster removed the action to the United States District Court for the Southern District of New York.  On July 1, 2008, the district court remanded the action to the state court.

## II.    DISCUSSION

### A.    Baytree's Motion to Disqualify Loeb & Loeb as Counsel for Broadcaster

Baytree contends that Loeb & Loeb must be disqualified as counsel for Broadcaster because of conflicts of interest that arise from its representation of Wade in the Gardner action and the FTC defendants in the FTC action.

Motions to disqualify counsel are decided under state law.  In re County of Los Angeles, 223 F.3d 990, 994 (9th Cir. Cal. 2000); L.R. 83-3.1.2 (adopting California's standards of professional conduct and providing that the American Bar Association's Model Rules of Professional Conduct may be considered as guidance).  Whether counsel must be disqualified "ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.  The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.  The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process."  Metro-Goldwyn-Mayer, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|----------|----------------------|------|-----------------|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

Tracinda Corp., 36 Cal. App. 4th 1832, 1838 (1995) (quoting In re Complex Asbestos Litig., 232 Cal. App. 3d 572, 585 (1991)).

Restrictions on a lawyer's representation of adverse interests are set forth in California Rule of Professional Conduct 3-310.  Rule 3-310 provides, in pertinent part, as follows:

> (C) A member shall not, without the informed written consent of each client;
>> (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
>> (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
>> (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.
> . . .
> (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Loeb & Loeb has represented Wade in the Gardner action -- albeit briefly -- and the FTC defendants in the FTC action.[1]  It now represents Broadcaster in this action.

---

[1] The Broadcaster defendants maintain that Loeb & Loeb represented Wade in the Gardner action only in his capacity as an officer of Broadcaster, and that Armstrong of the law firm of Howrey LLP represented Wade in his personal capacity.  In support of this contention, they point to the cover sheet for the joint motion to dismiss filed on May 22, 2008, in the Gardner action and in the Goodman defamation action.  This cover sheet indicates that Zweig and Licker represent Broadcaster and that Armstrong alone represents Wade.

However, the Broadcaster defendants concede that Armstrong did not file a formal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

Technically speaking, Broadcaster is a defendant in this case, like Wade and the FTC defendants, but its interests herein are adverse to those of its co-defendants. In a derivative lawsuit such as this, a corporation's shareholders bring claims against third parties on behalf of the corporation, where the corporation's board of directors refuses to assert such claims. The defendants are generally corporate officers and directors. Because a derivative suit is essentially an action to compel the corporation to sue, the corporation is also a defendant. It is only a "nominal" defendant, however, because any relief that the plaintiff obtains from the defendant officers and directors accrues to the benefit of the corporation, making it the real party in interest. Messinger v. United Canso Oil & Gas, Lttd., 80 F.R.D. 730, 733 (D. Ct. 1978). Thus, it has been said, the corporation in a derivative action "is in the anomalous position of being both a plaintiff and a defendant." Musheno v. Gensemer, 897 F. Supp. 833, 835 (M.D. Pa. 1995).

### 1.    Loeb & Loeb's Duty of Confidentiality

California law distinguishes between standards for conflicts arising from simultaneous representation of clients with potentially adverse interests and for conflicts arising out of successive representation of clients with adverse interests. Metro-Goldwyn-Mayer, 36 Cal. App. 4th at 1839. In the case of successive representation, where an attorney represents a party whose interests are adverse to those of the attorney's former client, "courts have recognized that the chief fiduciary value is that of client *confidentiality*." Flatt v. Super. Ct., 9 Cal. 4th 275, 283 (1994) (emphasis in original). "Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the

_____

appearance on behalf of Wade until March 27, 2008, the day after a hearing before Judge Stanton in the Baytree action in which counsel for Baytree raised the issue that Loeb & Loeb's dual representation of Broadcaster and Wade might present a conflict of interest warranting disqualification. Declaration of Michael L. Mallow ("Mallow Decl.") ¶¶ 11-12; Compendium, Ex. 46 at 1033. Prior to March 27, 2008, Zweig and Licker of Loeb & Loeb were Wade's only counsel of record. These attorneys filed on Wade's behalf the notice of removal in the Gardner action and  also entered into a stipulation to extend time for Wade's response to Gardner's complaint. It is apparent, therefore, that Loeb & Loeb represented Wade in his personal capacity for a period of time and that they performed important legal services for him.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." Id. (emphasis in original).  In applying the substantial relationship test, a court must look to the subject matter of the prior and current representation; where there is substantial overlap between the two, disqualification is mandated because it is presumed that the attorney obtained confidential information from the first client that is relevant to the representation of the second client. This test is designed to balance, on the one hand, the subsequent client's interest in freely choosing her legal representation, and on the other hand, the former client's interest in keeping confidential the matters disclosed to his attorney in the course of the prior representation.  Id.

Here, it does not appear that the FTC action and this action present similar legal or factual issues.  However, there is a clear nexus between the facts involved in the Gardner action and those presented herein.  The alleged defamatory comments that gave rise to the Gardner action relate to the subject matter of Baytree's claims against the defendants in this action; *viz.*, the allegations that controlling persons of Broadcaster engaged in a scheme to loot the company's assets.  There being no indication that Wade has given his informed written consent for Loeb & Loeb to represent Broadcaster's interests in this action against his own, Loeb & Loeb's present representation of Broadcaster runs afoul of Rule 3-310(E).  However, even if Wade's written informed consent were obtained, Loeb & Loeb's representation of Broadcaster in this action would present serious concerns that warrant disqualification.

## 2.      **Loeb & Loeb's Duty of Loyalty**

An attorney's simultaneous representation of clients with interests adverse to one another implicates a different value: the attorney's duty of loyalty.  Flatt, 9 Cal. 4th at 284.  In a dual representation case, "[e]ven though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*.  Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one."  Id. (emphasis in original).

In keeping with this view, courts around the country have either strongly discouraged or prohibited dual representation of the corporation and individual defendants to a derivative suit because a potential conflict of interests exists between

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

counsel's duties to the corporation and counsel's relationship with the individual defendants.  See, e.g., Forrest v. Baeza, 58 Cal. App. 4th 65, 74 (1997) ("Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud."); Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1317 (3d Cir 1993) ("We have no hesitation in holding that -- except in patently frivolous cases -- allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel."); Lewis v. Shaffer Stores Co., 218 F. Supp. 238 (S.D.N.Y. 1963); Murphy v. Washington Am. League Base Ball Club, Inc., 324 F.2d 394, 397-98 (D.C. Cir. 1963); Deborah A. DeMott, Shareholder Derivative Actions: Law and Practice § 6:31 (2007) ("Dual representation of the corporation and individual defendants in a derivative action may present an impermissible conflict.").  Especially where the corporation takes an active role in the litigation, courts have stated that independent counsel must be obtained.  See, e.g., Schmidt v. Magnetic Head Corp., 476 N.Y.S. 2d 151, 157-58 (1984); Cannon v. U.S. Acoustics Corp., 398 F. Supp. 209, 216 (N.D. Cal. 1975); Messing v. FDI, Inc., 439 F. Supp. 776, 782 (D.N.J. 1977) (where corporation had elected to take an active stance in the litigation and where the directors have been accused of fraud, the corporation must obtain independent counsel).  Such independent counsel, courts have emphasized, must have had no prior ties to the individual defendants or the corporation, and as a consequence, disqualification generally extends to the law firm of the conflicted lawyer. See Messing, 439 F. Supp. at 780-83; see also In re Oracle Sec. Litig., 829 F. Supp. 1176, 1190 (N.D. Cal. 1993) (requiring that the corporation in a derivative action retain independent counsel "having no prior relationship with the corporation or the independent defendants.").

Whether Loeb & Loeb should be disqualified from representing Broadcaster presents a related, but different question.  Loeb & Loeb does not simultaneously represent Broadcaster, on the one hand, and Wade or the FTC defendants, on the other. Both the FTC action and the Gardner action have been dismissed.  But notwithstanding the fact that this case does not involve the simultaneous representation of adverse interests, in light of Broadcaster's posture in this derivative action, in which serious claims of corporate fraud and looting have been alleged, it cannot be said that all concerns regarding the ability of Loeb & Loeb to uphold steadfastly its duty of loyalty to its client have been dispelled.

It has been stated that "[s]uccessive dual representation of individual defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

and the corporation is fully as problematic as simultaneous dual representation."  DeMott, *supra*, at § 6:31.  Where counsel represents the interests of the corporation and of the individual defendants, counsel's ability to conduct an adequate investigation is hampered, "bound as the lawyer is to preserve the confidences and secrets of the former client.  The lawyer, moreover, is not realistically likely to be able to unlearn all she has already learned about a matter and then relearn it without betraying either the present or the former client."  Id. (citing Stepak ex rel. S. Co. v. Addison, 20 F.3d 398, 405-06 (11th Cir. 1994)).  This type of representation also casts doubt upon counsel's impartiality and objectivity because "a lawyer committed to achieving the best outcome for a client frames her understanding of underlying facts, especially those tied to questions of motives, good faith, and fiduciary duty, into a comprehensive picture that is difficult to put aside as entirely as subsequent impartiality would require."  Id.  Faced with these concerns, the court in Stepak held that it would be an invalid exercise of business judgment for a board of directors to conduct a reasonable investigation of a shareholder demand using counsel that had previously defended the alleged corporate wrongdoers in connection with related criminal proceedings.  Stepak, 20 F.3d at 403-06.

Similarly, one author has highlighted the difficulties with curing dual representation in a derivative suit by requiring the individual defendants to obtain independent counsel, while permitting the original counsel to continue to represent the corporation:

> while this procedure removes the outward appearances of dual representation, the substance of the wrong remains.  A residual bias in favor of the individual defendants might continue to undermine counsel's judgment.  This potential bias would stem from the fact that counsel's first loyalty might remain with the directors and officers of the corporation, who have been his principal contact with the inanimate corporate client in the past.  In addition, counsel might fear that rendering advice antagonistic to the insiders' interests would impair future relations with his corporate client.  For these reasons . . . [having] the corporation secure new counsel seems the sounder alternative.

Comment, Independent Representation for Corporate Defendants in Derivative Suits, 74 Yale L.J. 524, 533 -534 (1965) (quoted in Forrest v. Baeza, 58 Cal. App. 4th 65, 81

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|----------|------------------------|------|------------------|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

(1997)).  The court in <u>Forrest</u>, echoed these concerns in upholding the trial court's determination that the *corporation* must obtain independent counsel in a derivative action because it could not be represented simultaneously by counsel who also represented the individual defendants.  <u>Forrest</u>, 58 Cal. App. 4th at 80-81.

The foregoing concerns weigh heavily against permitting Loeb & Loeb to represent Broadcaster's interests in this derivative action in light of its previous representation of the FTC defendants and Wade.  Furthermore, the disqualification of Loeb & Loeb as counsel for Broadcaster on the basis of these prior relationships with parties that are presently adverse to the corporation is in complete accord with those decisions that have required substitute counsel in a derivative action to have no prior connection with the individual defendants or the corporation.  <u>See In re Oracle Sec. Litig.</u>, 829 F. Supp. 1176, 1190 (N.D. Cal. 1993) ("the corporation must, before proceeding further with the derivative action, retain independent counsel having no prior relationship with the corporation or the individual defendants."); <u>Messing v. FDI, Inc.</u>, 439 F. Supp. 776, 782 (D.N.J. 1977) ("Independent counsel for the corporation, unshackled by any ties to the directors, would be in the unique position of having only the corporation's interest at stake."); <u>Yablonski v. United Mine Workers</u>, 454 F.2d 1036, 1041 (D.C. Cir. 1971) ("Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer."); <u>Lewis v. Shaffer Stores Co.</u>, 218 F. Supp. 238, 239-40 (S.D.N.Y. 1963) (in a derivative action, stating "it would be wise for the corporation to retain independent  counsel, who have no previous connection with the corporation, to advise it as to the position it should take in this controversy.").

The Broadcaster defendants argue that Baytree lacks standing to seek Loeb & Loeb's disqualification because it is neither Loeb & Loeb's client nor its former client.  Citing <u>Kasza v. Browner</u>, 133 F.3d 1159, 1170-71 (9th Cir. 1998); <u>Optyle Eyewear Fashion Int'l Corp. v. Style Companies</u>, 760 F.2d 1045, 1050 (9th Cir. 1985); <u>In re Yarn Processing Patent Validity Litig.</u>, 530 F.2d 83, 88-91 (5th Cir. 1976) ("To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist.").  The cases upon which they rely for this argument are inapposite, however.  None are derivative suits, and therefore, none confronted the problem, particular to such suits, of ensuring that the corporation's interests are adequately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

represented.  Plainly, "an inanimate corporate entity, which is run by directors who are themselves defendants in the derivative litigation, cannot effectively waive a conflict of interest as might an individual under applicable professional rules such as Cal. R. Prof. Conduct 3-600(E) and 3-310."  In re Oracle Sec. Litig., 829 F. Supp. 1176, 1189 (N.D. Cal. 1993).  Therefore, in a derivative suit in which the corporation's directors are accused of serious allegations of malfeasance, it falls either to the court or to the plaintiff, acting on the corporation's behalf, to ensure that the corporation's interests are fully and adequately represented by counsel.

For the foregoing reasons, the Court finds and concludes that Baytree's motion to disqualify Loeb & Loeb must be GRANTED.  Broadcaster is hereby directed to retain independent counsel having no prior relationship with the corporation or the individual defendants.  See id. at 1190.  As other courts have done, the Court defers to the non-defendant directors to make this selection.  Id. (citing cases).  "Certainly new counsel will recognize their duty to represent solely the interests of the corporate entity.  And should difficulties arise, the parties or counsel may apply to the court for additional relief."  Id. (quoting Cannon v. US Acoustics Corp., 398 F. Supp. 209, 220 (N.D. Ill. 1975)).

## B.    Motions for a Preliminary Injunction and to Appoint a Receiver

### 1.    Legal Standard

A preliminary injunction is appropriate when the moving party shows either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in the moving party's favor.  See Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).  These are not two distinct tests, but rather "the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'"  Id.; Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) ("the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor.").  A "serious question" is one on which the movant "has a fair chance of success on the merits."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

**2.      Analysis**

Baytree seeks to enjoin defendants during the pendency of this action from (1) spending, transferring, selling, or conveying in any manner the funds, assets, and shares of Broadcaster or otherwise encumbering or binding said funds, assets, and shares except to the extent necessary to pay taxes, rent, utilities, current base salaries of presently existing employees, and attorneys' fees; and (2) an order directing that all checks to be drawn upon Broadcaster's funds for the foregoing items be reviewed by outside counsel to Broadcaster, chosen by the corporation.  Baytree argues that this injunction is necessary in order to prevent defendants from looting the company's remaining assets and undermining Broadcaster's ability to remain in business.

The parties do not dispute that during fiscal year 2007, Broadcaster, through its wholly-owned subsidiaries BIG and AccessMedia, paid third-party vendors ostensibly to purchase Internet advertisements promoting broadcaster.com.  Declaration of Blair Mills ("Mills Decl.") ¶ 13; Reply in Support of Mot. for Prelim. Inj. 8.  Defendants assert that during this time period, Broadcaster spent $6,287,507 for online advertising, or "traffic." Mills Decl. ¶ 13.  They assert that some of this money was paid directly to advertisers, and the rest was paid to Frostham, which purchased advertising on behalf of Broadcaster. Id. ¶ 14.  According to defendants, Frostham subtracted its commission from the payment it received from Broadcaster and paid the rest of the money to advertisers.  Id.

Mills, Broadcaster's Chief Financial Officer, asserts that these expenditures were legitimately spent on advertising.  Mills Decl. ¶¶ 13-14.  Likewise, Wade, Broadcaster's Chief Executive Officer, avers that Broadcaster used Frostham, "an established Internet marketing firm," to purchase advertising in order to exploit Frostham's existing marketing relationships."  Wade Decl. ¶ 45; see also Mills Decl. ¶ 14 (describing Frostham as "an established marketing firm").  Wade also claims that Broadcaster's advertising expenditures "were legitimately incurred and paid, either directly to the advertiser, or to Frostham, which then passed these payments (after subtracting its commission) through to the advertiser," and that "[a]ll of the traffic purchased was legitimate traffic, purchased for a legitimate business purpose and from third parties." Wade Decl. ¶¶ 46-47.  Both Wade and Mills expressly deny that Broadcaster's online advertising payments were ultimately received by defendants.  Id. ¶ 47; Mills Decl. ¶ 13.

Defendants also rely on the declaration of A.J. Robbins ("Robbins"), the principal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

of A.J. Robbins, PC, which is described only as a Colorado professional corporation. Declaration of A.J. Robbins ("Robbins Decl.") ¶ 1. Robbins asserts that, at the behest of counsel for Broadcaster, his company reviewed documentation pertaining to Broadcaster's transactions with Frostham and third-party vendors, as well as documentation relating to Frostham's transactions with third-party vendors. Id. ¶¶ 2-4; Compendium, Exs. 52-53. Based on this review, Robbins' company concluded that AccessMedia and BIG purchased traffic and webmaster services from third-party vendors, both directly and using Frostham as an intermediary. Id. ¶ 5. Based on this conclusion, Robbins' company concluded that Broadcaster's expenditures "were for actual traffic and webmaster services for the benefit of Broadcaster, Inc." and that they were "valid business expenditures for Broadcaster, Inc." Id. ¶ 6.

Baytree counters that there is cause to doubt that Frostham and the other companies to which Broadcaster supposedly paid advertising fees have operated independently from Broadcaster and Quan. Baytree argues that these and other payments to companies and individuals controlled by or connected to Quan indicates that the payments were not made for the benefit of Broadcaster, but instead, were made pursuant to defendants' looting scheme.

Much of Baytree's evidence in support of these contentions lacks foundation or is otherwise unreliable. For example, counsel for Baytree avers that Frostham, and other companies that received money from AccessMedia or Frostham, had no other clients, no phone numbers, and no presence on the Internet. Brian Gardner Reply Decl. ¶ 12. However, the Court is unable to rely upon these assertions, as counsel has not explained the basis for his personal knowledge as to these matters.

Baytree maintains that Broadcaster paid over $600,000 to non-employees, including some defendants, who were closely tied to Quan. Baytree also maintains that Broadcaster paid Quan $156,621.93 between July 2006 and June 2007, during which time, Quan was not an employee of Broadcaster. Brian Gardner Reply Decl. ¶ 26, Ex. A. However, Baytree fails to adduce evidence to support its assertions that these persons were not employed by Broadcaster when they were paid. Moreover, even if these persons were not paid employees, Baytree adduces no evidence to show that Broadcaster did not receive valuable services from these persons in exchange for its payments. The mere fact that Quan and persons associated with Quan received payments from Broadcaster while they were not formal employees of Broadcaster would not support

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|----------|------------------------|------|------------------|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

Baytree's looting allegations.

Baytree further argues that Quan signed numerous checks on an AccessMedia account after AccessMedia had become a subsidiary of Broadcaster, even though Quan was not at that time an officer or director of Broadcaster.  Brian Gardner Reply Decl. ¶ 2, Ex. K.  All of the checks in question were signed by Quan within the two weeks after the creation of Broadcaster, the last signed on June 16, 2006.  Id.  Baytree has adduced no evidence to show that Quan signed these checks without authorization.  Moreover, even if Quan signed these checks without authorization, this would not support Baytree's looting allegations because Baytree has presented no evidence to indicate that any of these checks were issued for an improper purpose.

Baytree also relies on the assertions contained in Orza's letter of resignation, in which Orza states that he learned, based on his investigation, that Broadcaster "appeared to be spending cash at an alarming and irresponsible rate, while generating little to nothing in revenues."  Compendium, Ex. 20.  However, Baytree fails to set forth a basis for Orza's personal knowledge of the facts set forth in his letter.  Additionally, Baytree has not submitted a sworn declaration from Orza attesting to these facts.  Baytree also relies on Gardner's declaration, but, again, Baytree does not explain the basis for Gardner's knowledge of many of the factual assertions contained therein.  In fact, during his deposition, Gardner acknowledged that he asserted many of the facts in his declaration on the basis of knowledge that he acquired entirely from his own counsel. See, e.g., Compendium, Ex. 38 at 25:5-26:13; 39:17-40:6; 50:16-51:6; 54:5-11; 63:2-6. For the foregoing reasons, Baytree's reliance on Orza's letter and Gardner's declaration is unavailing.

On the other hand, the apparent close ties between Broadcaster and Frostham give rise to concerns regarding the propriety of the ostensible advertising fees paid to Frostham.  In the Goodman action, Goodman proffered what he described as a copy of Broadcaster's telephone directory ("the Broadcaster telephone directory").[2]  Declaration

---

[2] In the Goodman action, opposing counsel for Quan, Mills, and Wade; who also represent these and other defendants in this action; objected to other exhibits filed by Goodman, but did not raise an objection regarding the authenticity of the Broadcaster telephone directory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

of Paul Goodman in Support of Reply for Mot. for Prelim. Inj. ¶ 5, Ex. B at 2-3 (filed in the Goodman action on August 1, 2008; Docket 74). This document, which bears Broadcaster's name and address, and which is entitled "company directory," also provides Frostham's phone number. The Broadcaster telephone directory contains the telephone numbers and e-mail addresses for numerous individuals and indicates that many of these individuals work for Frostham. Moreover, documentation filed on or about January 28, 2008, with the Florida Secretary of State in connection with Frostham's dissolution indicates that Frostham and Broadcaster, at least as of that date, shared the same address in Chatsworth, California. Brian Gardner Decl. ¶ 2, Exs. O at 1, W at 2. Two individuals designated in these documents as Frostham representatives -- Kim Hoang and Michael Quinones -- appear on the Broadcaster telephone directory. Likewise, the majority of individuals on Frostham's payroll for fiscal year 2007 also appear on the Broadcaster telephone directory. Compendium, Ex. 30; Sullivan Decl. ¶ 2, Ex. E. Baytree also presents evidence that Gould, whose name appears on the Broadcaster telephone directory, is the holder of Frostham's American Express credit card. Brian Gardner Decl. ¶ 28, Ex. C.

These ties between Broadcaster and Frostham cast doubt upon defendants' assertion that Frostham was chosen to place advertisements on behalf of Broadcaster in light of its status as "an established Internet marketing firm" and in order to exploit its "existing marketing relationships." Rather, the evidence indicating that Broadcaster and Frostham share the same address and much of the same personnel lends credence to Baytree's contention that Frostham is a de facto division or subsidiary of Broadcaster.

Nevertheless, Baytree has failed to adduce evidence showing that Frostham did not place advertising on behalf of Broadcaster. In the absence of such evidence, the Court is unable to conclude that that Frostham is a mere "shell" company that has carried on no independent business operations or that Broadcaster made fraudulent payments to Frostham for nonexistent advertising services.[3] Baytree also maintains that Broadcaster

---

[3] Baytree maintains that Broadcaster paid Frostham an "agency fee" of approximately $820,000, which amounted to all of Frostham's expenses. Brian Gardner Reply Decl. ¶¶ 4, 9. However, the evidence cited by Baytree does not support this contention. See id. ¶ 9, Exs. D, F, I, J. In particular, Baytree does not provide the Court with a complete accounting of Frostham's expenses during the time that it did business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

paid fraudulent advertising fees to other allegedly related corporate entities, but fails to set forth evidence to support its contention that Broadcaster did not receive valuable advertising services in exchange. The Court is unable to conclude, on the basis of little more than the evidence that Broadcaster may have paid persons and entities with vague and shifting ties with the company for unspecified services, that these payments were improper.

Additionally, because Baytree has not shown that defendants have engaged in any looting, there is no basis for Baytree's claims that defendants may loot Broadcaster's assets in the future. Therefore, Baytree has failed to show that an injunction is necessary to avert irreparable harm.

On this record, Baytree's overall theory of misconduct is all too speculative to warrant continued injunctive relief. For the foregoing reasons, the Court DENIES Baytree's motion for a preliminary injunction.

### C.      Motion to Set Aside Clerk's Entry of Default

Good cause having been shown, the Court sets aside the Clerk's entry of default against the Alchemy F/X pursuant to Fed. R. Civ. P. 55(c), and to the extent the Berman defendants request this relief, their motion is GRANTED. The Berman defendants' motion to strike Baytree's request for an entry of default against the remainder of the Berman defendants is DENIED as moot because Baytree never complied with the Court's July 7, 2008 order to file a new request for an entry of default with the noted deficiencies corrected.

## III.   CONCLUSION

---

with Broadcaster. Therefore, the Court is unable to confirm on the basis of the evidence provided by Baytree that Broadcaster paid all of Frostham's expenses.

Baytree also points out that Frostham paid funds to AccessMedia. Id. ¶ 10, Ex. B. However, because AccessMedia is a subsidiary of Broadcaster, it is unclear how this furthers Baytree's looting allegations.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2822 CAS (AJWx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | BAYTREE CAPITAL ASSOCIATES, LLC, ETC. v. NOLAN QUAN; ET AL. | | |

In accordance with the foregoing, the Court finds and concludes as follows:

(1)     Baytree's motion to disqualify Loeb & Loeb as counsel for Broadcaster is GRANTED, and Broadcaster is hereby directed to retain independent counsel having no prior relationship with the corporation or the individual defendants.

(2)     Baytree's motion for a preliminary injunction is DENIED.  Baytree's motion for an order appointing a receiver is DENIED.

(3)     The Berman defendants' motion to set aside the default of Alchemy F/X is GRANTED.  The Berman defendants' motion to strike Baytree's request for an entry of default against the remainder of the Berman defendants is DENIED as moot.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |